UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DONNIE COOK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:19-CV-63 AGF |
| | ) |
| DANNY ADAMS, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of *pro se* plaintiff Donnie Cook, an inmate at Eastern Reception Diagnostic and Correctional Center ("ERDCC"), for leave to commence this action without payment of the required filing fee. Having reviewed the motion and the financial information submitted in support, the Court has determined to grant the motion, and assess an initial partial filing fee of $1.70. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.[1]

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an

---

[1] Plaintiff sent a letter to the Clerk of this Court on March 25, 2019, inquiring into the status of his motion for leave to proceed *in forma pauperis* and complaining about the length of time it was taking the Court to complete initial review. *See* ECF No. 6. The Court delayed initial review of this matter due to the potentially duplicative nature of the allegations in this case. Approximately one month before this case was filed, plaintiff initiated a different case by filing a document titled "Petition for Writ of Habeas Corpus Pursuant to Supreme Court Rule 91" that was docketed as a habeas petition. *See Cook v. Payne*, No. 4:18-CV-2118-JMB (E.D. Mo. Dec. 19, 2018). Plaintiff made the same legal arguments in that case based on the same factual situation - that he had been "placed in Administrative segregation indefinitely for a homemade weapon in violation of due process, equal protection and under atypical and significant hardship." *Id.* at ECF No. 1 at 1. The Court reviewed plaintiff's petition in that matter and gave plaintiff the opportunity to refile that case as an action under 42 U.S.C. § 1983. On June 4, 2019, that matter was dismissed, allowing this case to proceed without concerns of duplicity.

initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of the instant motion, plaintiff submitted an inmate account statement showing average monthly deposits of $8.50. The Court finds that plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $1.70, twenty percent of plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, is malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a *pro se* complaint under 28 U.S.C. § 1915, the Court accepts the well-pled facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even *pro se* complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the *pro se* plaintiff that assumed facts that had not been pleaded).

**The Complaint**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 against two defendants, both of whom are Missouri Department of Corrections ("MDOC") employees: Danny Adams (Disciplinary hearing officer at ERDCC) and Unknown Bingham (Assistant Warden at ERDCC). Plaintiff sues both defendants in their official and individual capacities.

According to the allegations of plaintiff's complaint, at some unspecified time in the past, plaintiff and his cellmate Jerald Martin were issued a major conduct violation for dangerous contraband after a homemade knife was found "wrapped around the railing of [plaintiff's] cellmate's bunk" during a cell search. ECF No. 1 at ¶ 5. Plaintiff requested that defendant Adams, as the disciplinary hearing officer, review video camera footage to prove plaintiff's assertion that another prisoner had planted the knife in his cell. Adams denied plaintiff's request to review video footage and found plaintiff guilty of the conduct violation. *Id.* at ¶¶ 8-9. As a result, plaintiff was punished with thirty (30) days of disciplinary segregation; indefinite assignment to administrative segregation; one (1) year of no-contact visits; one (1) year premium pay restriction; and the

violation was referred for prosecution. *Id.* at ¶ 9. Defendant Bingham approved Adams' denial of plaintiff's request to review the video camera footage and Adams' decision on plaintiff's punishment. *Id.* at ¶ 10. Plaintiff complains that his cellmate Martin's conduct violation was eventually dismissed and Martin was released from administrative segregation.

Plaintiff asserts that as a result of the conduct violation, he is suffering "atypical and significant conditions," including: 24-hour lock-in periods; no work or rehabilitation programs; indefinite assignment to administrative segregation with no meaningful review of when he can be released; lack of access to recreational periods during inclement weather due to a lack of winter clothing; and only one hour of recreational time three times a week that is confined to an outdoor cage approximately eight by four feet in size and shared by another prisoner. ECF No. 1 at ¶ 12. As a result of inadequate recreation time, plaintiff alleges that his muscles have atrophied and his chronic knee problem is worse. Plaintiff also claims that "[d]ue to the sensory deprivation in segregation, [he] is experiencing psychological problems of hallucinating, sleep deprivation, anxiety attacks, and extreme weight loss." *Id.*

Plaintiff seeks declaratory relief, injunctive relief, and damages. He would like a declaration that his constitutional rights have been violated; a preliminary and permanent injunction dismissing and expunging the conduct violation from his record; $100 per day from each defendant for compensatory damages; and $100 per day from each defendant for punitive damages.

## Discussion

Plaintiff alleges due process and equal protection claims. Plaintiff argues that he was denied due process by defendants when they found him guilty of the conduct violation without review of the relevant prison video footage. Plaintiff also asserts that his equal protections rights were violated by defendants when they dismissed the conduct violation against his cellmate Martin

(but not against him), arguing that there was no rational basis for the difference in treatment between plaintiff and Martin because their violations were based on the same circumstances. Plaintiff brings this case against both defendants in their official and individual capacities.

*Official Capacity Claims*

Both defendants are employees of the Missouri Department of Corrections ("MDOC"). Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official, in this case the State of Missouri. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." *Id.* To state a claim against a government official in his or her official capacity, plaintiff must allege that a policy or custom of the employer is responsible for the alleged constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). The instant complaint does not contain any allegations that a MDOC or State of Missouri policy or custom was responsible for the alleged violations of plaintiff's constitutional rights. As a result, plaintiff's claims against defendants in their official capacity fail to state a claim upon which relief may be granted and are subject to dismissal.

*Equal Protection Claims*

The Equal Protection Clause provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The purpose of the equal protection clause . . . is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sunday Lake Iron Co. v. Wakefield Twp.*, 247 U.S. 350, 352 (1918). Unequal treatment of "those who are entitled to be treated alike[] is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *Batra v. Bd. of Regents of Univ. of Neb.*, 79 F.3d 717, 721 (8th Cir.

1996) (*quoting Snowden v. Hughes*, 321 U.S. 1, 8 (1944)). "The good faith of [state] officers and the validity of their actions are presumed; when assailed, the burden of proof is upon the complaining party." *Sunday Lake*, 247 U.S. at 353 (citations omitted). Plaintiff's allegations must show purposeful discrimination – it is not enough for plaintiff to characterize an official's decision as "unequal." *Snowden*, 321 U.S. at 10.

Plaintiff does not provide a legal basis or any argument in support of his equal protection claim, except to say that "there was no rational basis for the difference in treatment" between himself and his cellmate Martin. ECF No. 1 at ¶ 15. Plaintiff seems to be making a "class of one" equal protection claim. The Supreme Court recognizes a "class of one" equal protection claim "where the plaintiff [does] not allege membership in a class or group," but instead "plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *accord Barstad v. Murray Cty.*, 420 F.3d 880, 884 (8th Cir. 2005). "Identifying the disparity in treatment is especially important in class-of-one cases." *Barstad*, 420 F.3d at 884.

Here, plaintiff's equal protection claim fails because the allegations of the complaint do not establish that plaintiff and Martin were similarly situated, or that plaintiff was intentionally treated differently. First, plaintiff has not demonstrated that he and his cellmate Martin are "entitled to be treated alike" or that they are "similarly situated" in relation to the resolution of their conduct violations. Plaintiff admits that both he and Martin were immediately placed in temporary confinement when the homemade knife was found in their shared cell. *See* ECF No. 1 at ¶ 6. It was only later that Martin's conduct violation was dismissed. The complaint does not allege that the reasons for the dismissal of Martin's conduct violation equally apply to plaintiff's violation, thereby making them similarly situated and entitled to alike treatment. Second,

nothing in the complaint indicates intentional or purposeful discrimination on the part of the defendants. Plaintiff complains that defendants refused to review video tape surveillance that would prove someone "not assigned to that cell" planted the knife. *Id.* However, defendants' refusal equally affected the outcome of cellmate Martin's violation. For these reasons, plaintiff's complaint fails to state individual-capacity claims against defendants for equal protection violations.

<u>Due Process Claims</u>

Prisoners may claim the protections of the Due Process Clause – they may not be deprived of life, liberty, or property without due process of law. *Haines v. Kerner,* 404 U.S. 519 (1972). According to the Supreme Court, prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995); *see also Phillips v. Norris,* 320 F.3d 844, 846-47 (8th Cir. 2003). Whether a prison discipline "imposes atypical and significant hardships" is a question of fact, but a plaintiff's complaint is subject to dismissal upon initial screening if it does not make a "threshold showing" that the complained-of deprivation meets the test. *Portley-El v. Brill,* 288 F.3d 1063, 1065 (8th Cir. 2002). To state a claim under § 1983 for unconstitutional placement in administrative segregation, a prisoner "must show some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship." *Phillips*, 320 F.3d at 847.

The Eighth Circuit has consistently held that placement in disciplinary and administrative segregation does not, in and of itself, amount to an atypical and significant hardship. *Portley-El,* 288 F.3d at 1065. Also, a thirty-day period in segregation has not been found to be unduly long. *See Kennedy v. Blankenship,* 100 F.3d 640, 641-42 (8th Cir. 1996) (demotion from

administrative segregation to thirty days in punitive isolation was not atypical and significant); *Orr v. Larkins,* 610 F.3d 1032, 1033-34 (8th Cir. 2010) (nine months in disciplinary segregation was not atypical and significant). However, the Supreme Court has considered the duration of a placement in segregation and found that an "indefinite" placement contributed to a finding of an atypical and significant hardship within the correctional context. *See Wilkinson v. Austin*, 545 U.S. 209, 224 (2005). In this case, plaintiff alleges hardship conditions as a result of his "indefinite" administrative segregation assignment. ECF No. 1 at ¶ 12.

Once a plaintiff has pled a cognizable due process claim by alleging a recognized liberty interest, the Court must consider what process is due. *See Beaulieu v. Ludeman,* 690 F.3d 1017, 1047 (8th Cir. 2012) (internal citations omitted). "Due process is flexible and calls for such procedural protections as the particular situation demands," but its fundamental requirement is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge,* 424 U.S. 319, 333-34 (1976) (internal quotations and alteration omitted). The Supreme Court has held that, in prison discipline cases, the requirements of due process are satisfied if "some evidence" supports the prison disciplinary decision. *Superintendent v. Hill,* 472 U.S. 445, 455 (1985).

Here, the complaint indicates that plaintiff had a hearing on his conduct violation at some point in time. *See* ECF No. 1 at ¶ 9. However, plaintiff also states that he has received "no meaningful reviews for which he can be released from Ad-seg." *Id.* at ¶ 9. The Supreme Court has stated that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate and that, accordingly, prison officials must engage in some sort of periodic review of the confinement of such inmates." *Williams v. Hobbs*, 662 F.3d 994, 1007 (8th Cir. 2011) (internal quotations omitted) (*quoting Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (abrogated on other grounds)). Based on plaintiff's alleged lack of meaningful review of his

"indefinite" segregation placement, the Court cannot state with certainty that plaintiff has received all the process that he is constitutionally due. *See Hobbs*, 662 F.3d at 1000-09 (affirming district court finding that plaintiff prisoner had not received "meaningful" reviews of his administrative segregation placement).

Although it is not entirely clear from the allegations, under a liberal construction of this *pro se* complaint, the Court finds that plaintiff has pled sufficient facts to survive initial review on his due process claims against defendants. Once the record is more complete at the summary judgment stage of this litigation, the Court will be able to better access plaintiff's due process claims. For all of the foregoing reasons, the Court will dismiss plaintiff's official-capacity claims and his claims brought under the equal protection clause, pursuant to 28 U.S.C. § 1915(e)(2). However, the Court will allow plaintiff's due process claims against both defendants to proceed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $1.70 within **thirty (30) days** of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to defendants Danny Adams and Unknown Bingham, with regard to plaintiff's due process claims.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to

issue upon the complaint as to defendants Danny Adams and Unknown Bingham for plaintiff's official-capacity claims because they fail to state a claim upon which relief can be granted. Plaintiff's claims brought against defendants Adams and Bingham in their official capacity are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint as to defendants Danny Adams and Unknown Bingham for plaintiff's equal protection claims because they are legally frivolous or fail to state a claim upon which relief can be granted, or both. Plaintiff's claims for violation of his equal protections rights against defendants Adams and Bingham are **DISMISSED without prejudice**.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 3rd day of July, 2019.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE